IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE CHISHOLM OIL AND GAS NOMINEE, INC., | : : | Chapter 11 |
| Reorganized Debtor. | : : | Bankr. No. 20-11595-BLS |

| | | |
|---|---|---|
| GOLD STAR ENERGY, LLC, TEXAS RAW OIL & GAS, INC., and OLJEINVEST, LLC, | : : : : | |
| Appellants, v. | : : : | |
| CHISHOLM OIL AND GAS OPERATING, LLC, | : : : | Civ. No. 24-670-CFC |
| Appellee. | : : | |

Katarina Earle, GIBBONS P.C., Wilmington, Delaware; Robert K. Malone, Kyle P. McEvilly, GIBBONS P.C., Newark, New Jersey; Michael A. Furlong, STEPTOE & JOHNSON, PLLC, Oklahoma City, Oklahoma,

    Counsel for Appellants

Kenneth J. Enos, S. Alexander Faris, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware; Thomas C. Scannell, Stephen A. Jones, FOLEY & LARDNER LLP, Dallas, Texas,

    Counsel for Appellee

## OPINION

November 14, 2025
Wilmington, Delaware

_____
CHIEF JUDGE

## I. INTRODUCTION

This appeal arises in the chapter 11 cases of reorganized debtor Chisholm Oil and Gas Nominee, Inc. ("Chisholm" or the "Reorganized Debtor") and certain affiliates (the "Debtors"). Gold Star Energy LLC, Texas Raw Oil & Gas Inc., and Oljeinvest, LLC (together, the "Appellants") have appealed the Bankruptcy Court's May 21, 2024 Order (Bankr. D.I. 351)[1] (the "Order"), which granted Chisholm's motion seeking an order interpreting and enforcing Chisholm's plan of reorganization and confirmation order (A1–257) (the "Enforcement Motion"), specifically with respect to the effect of Chisholm's rejection of certain joint operating agreements. For the reasons set forth herein, the Order will be affirmed.

## II. BACKGROUND

Chisholm is the operator of numerous oil and gas wells in Oklahoma. (App. 552.) For certain wells, Chisholm became the operator by merging with a company that had previously signed joint operating agreements with various interest owners—collectively, the "JOAs"—governing the development and operation of the wells. (App. 553; App. 901–31, 1127–29, 1170–72, 1186–88.) As the operator

---

[1] "Bankr. D.I. __" shall refer to the docket of the Reorganized Debtor's chapter 11 case, captioned *In re Chisholm Oil and Gas Nominee, Inc.*, No. 20-11595-BLS, unless the docket of the main case, Case No. 20-11593-BLS is otherwise indicated. The appendix (D.I. 17) to Appellants' opening brief is cited herein as "A__," and the appendix (D.I. 20) to Chisholm's answering brief is cited herein as "App. __."

under the JOAs, Chisholm drilled and operated oil and gas wells in an Area of Mutual Interest—an "AMI"—in two Oklahoma counties wherein numerous oil and gas interest owners cooperated in exploring for and acquiring oil and gas leases in the AMI pursuant to AMI agreements, and, pursuant to the JOAs, cooperated in the drilling and development of wells within the AMI. (App. 552–53, 1127–29, 1170–72, 1186–88.) Appellants were parties to the AMI agreements and parties to the JOAs. (*Id.*) Appellants owned and continue to own certain interests in oil and gas leases and wells in the AMI. (*Id.*) In turn, their oil and gas interests were governed by the terms of AMI agreements and the JOAs. (*Id.*)

On June 17, 2020 (the "Petition Date"), the Debtors filed voluntary chapter 11 bankruptcy cases. (App. 426.) The Debtors filed their proposed plan in August of 2020 (App. 2–63) (the "Plan") and a plan supplement on September 4, 2020 (App. 64–356; App. 357–421) (the "Plan Supplement"). The Plan Supplement contained a schedule of rejected contracts which included the JOAs with the Appellants. (App. 360–416.) The Bankruptcy Court entered an order confirming the Plan on September 23, 2020 (App. 422–521) (the "Confirmation Order").

The Plan and Confirmation Order provided: (a) that the Debtors were "vested with all property of the Estates, free and clear of all Claims, liens, encumbrances, charges, and other interests," (b) that the Bankruptcy Court would retain "exclusive jurisdiction over all matters arising out of, and related to" the chapter 11 cases, and

(c) that the "commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any claims or Causes of Action released or exculpated" under the plan and confirmation order was permanently enjoined. (App. 49–54, Plan §§ 10.2, 10.6(a), 11.1.) Pursuant to the Plan and Confirmation Order, Chisholm rejected Appellants' JOAs as of the Plan's effective date pursuant to § 365 of the Bankruptcy Code. (App. 438–39 ¶ 12; App. 288, 297, 298, 373–76, 398–400, 409–12, 438.) The Plan's effective date occurred on October 21, 2020.

Four months later, on February 22, 2021, Appellants filed a lawsuit in the District Court of Tulsa County for the State of Oklahoma (the "State Court") asserting claims for post-petition proceeds based on assertions that Chisholm had underpaid or improperly calculated amounts owed to Appellants for their interests in the wells. Appellants subsequently filed a summary judgment motion (App. 751–59) (the "MSJ") asking the State Court to determine (a) whether certain oil and gas interests in the AMI had vested in Chisholm under the Plan and (2) whether Chisholm's rejection of the JOAs under the Plan and Confirmation Order had adversely affected the Appellants' rights under the JOAs. (App. 751–59.) More specifically, Appellants sought to avoid the effect of the typical non-consent penalties, as described below, that the JOAs imposed on them.

Pursuant to the JOAs, any party thereto could propose the drilling of a new oil and gas well within the AMI, and thereafter, all the other parties were required make

3

an election regarding their participation in the payment of drilling and completion costs with respect to the well: each party had the opportunity to elect to *participate* in the costs of drilling the well, or the party could elect to "go non-consent"—*i.e.*, not to participate in the drilling costs. Importantly, under article VI.B(2)(b) of the JOAs, the parties electing to participate ("Consenting Parties") would bear "the entire cost and risk of conducting such operations." (App. 909–10.) Parties electing not to participate ("Non-Consenting Parties") would not bear the costs and risks of drilling the proposed well and would relinquish their interest in the well to the Consenting Parties until the Consenting Parties recovered a fixed amount of proceeds from the well ("Non-Consent Provisions"). (*Id.*)

Specifically, the JOAs provided that when the drilling of a new well began and a party elected *not* to participate, that Non-Consenting Party "shall be deemed to have relinquished to Consenting Parties . . . all of such Non-Consenting Party's interest in the well" and the "Consenting Parties *shall own* . . . all of such Non-Consenting Party's interest in the well and share of production therefrom . . . ." (App. 909) (emphasis added). The JOAs further provided that any interests relinquished to the Consenting Parties under the Non-Consent Provisions would automatically revert to the Non-Consenting Parties only after the proceeds of oil and gas produced from the well exceeded 500% of the Non-Consenting Party's share of certain specified drilling and other costs and 300% of the Non-Consenting Party's

4

share of certain equipment and operating costs. (App. 910.) These provisions impose what are often referred to as "Non-Consent Penalties."

Prior to the bankruptcy, Appellants elected to go non-consent in certain oil and gas wells governed by the JOAs. (App. 933, 1127–29, 1170–72, 1186–88.) These elections triggered the JOAs' Non-Consent Provisions and Non-Consent Penalties and operated to relinquish Appellants' interests in the oil and gas wells at issue to Chisholm until Chisholm recovered the Non-Consent Penalties out of the production proceeds from those wells. During this "Relinquishment Period," the relinquishment remains in effect until, as stated in Article VI.B(2)(d), the penalties are recovered, whereupon "the relinquished interests . . . shall automatically revert to" the Appellants. (App. 910.)

Through the MSJ, Appellants asked the State Court to declare that Chisholm does not possess the interests that the Appellants relinquished to it prior to bankruptcy pursuant to the JOAs' Non-Consent Provisions, and that, as a result of the JOAs' rejection by Chisholm, Appellants are entitled to proceeds from the wells in which they went non-consent, notwithstanding the fact that the requirements for their reversionary interests to revert have not yet been met. Taking the position that the Bankruptcy Court has exclusive jurisdiction to determine the issues presented to the State Court, and that the MSJ lodged an impermissible collateral attack on the Plan and Confirmation Order, Chisholm filed the Enforcement Motion in the

5

Bankruptcy Court. Briefing followed (A1–340), and oral argument was held on March 11, 2024 (A341–96).

For the reasons set forth in the Bankruptcy Court's May 8, 2024 opinion, *In re Chisholm Oil and Gas Nominee, Inc.*, 660 B.R. 593 (Bankr. D. Del. 2024) (the "Opinion"), the Bankruptcy Court concluded that the Enforcement Motion was a "core" matter, such that the Bankruptcy Court had authority to issue final order in the matter. *Id.* at 598. Declining to abstain, the Bankruptcy Court determined that "the predominance of core bankruptcy issues (such as the effect of rejection of executory contracts and the interpretation and enforcement of the Confirmation Order) weighed heavily against abstention," and that while the "issues presented also implicate Oklahoma state law, bankruptcy courts are often called upon to consider state law when determining bankruptcy issues." *Id.* at 600. As "ample case law exists to provide guidance on the Oklahoma property law and oil and gas law issues," the Bankruptcy Court further declined to exercise its discretion to certify a question of state law to the Oklahoma Supreme Court. *See id.*

Turning to the merits of the Enforcement Motion, the Bankruptcy Court rejected Appellants' argument that the Debtors' rejection of the JOAs restored the parties to tenancy in common status under Oklahoma common law such that Appellants were entitled to immediate payment of their proportionate share of production revenues beginning as of the Petition Date. The Bankruptcy Court

determined that, under Oklahoma law, oil and gas leases were real property interests capable of being transferred. Relying on well-established law holding that rejection operates not as a recission but a breach, and that parties do not go back to their pre-contract positions following rejection, the Bankruptcy Court held that Chisholm's rejection of the JOA did not "unwind" Appellants' elections under the Non-Consent Provisions of the JOA. *See id.* at 601. Rather, "[t]hose decisions, fully performed prepetition, survive rejection of the contracts under § 365." *Id.*

On June 4, 2024, Appellants filed a timely notice of appeal. D.I. 1. The appeal is fully briefed. D.I. 16, 19, 21. No party requested oral argument.

## III. ANALYSIS

Appellants argue that I should reverse the Order for three reasons: (1) the Bankruptcy Court lacked jurisdiction to enter the Order, D.I. 16 at 11; (2) the Bankruptcy Court should have abstained and either deferred to the State Court proceedings or certified "unsettled questions of state law to the Oklahoma Supreme Court," *id.* at 14 (some capitalization removed); and (3) the Bankruptcy Court "erred in deciding novel questions of Oklahoma law such that it concluded [that] Appellants are still bound by the rejected JAOs and not entitled to payment of their proportionate share of production revenues," *id.* at 16 (some capitalization removed).

7

### A. The Bankruptcy Court Properly Exercised Jurisdiction Over the Enforcement Motion

"Bankruptcy courts have limited statutory jurisdiction under the Bankruptcy Code and limited constitutional jurisdiction under Article III." *In re Somerset Reg'l Water Res., LLC*, 949 F.3d 837, 844 (3d Cir. 2020) (citing *Stern v. Marshall*, 564 U.S. 462, 473–74, 482 (2011)). "Unless the parties consent, bankruptcy courts have jurisdiction to enter final judgments only in 'core proceedings.'" *Id.* (citing 28 U.S.C. § 157(b), (c)(1); *Stern*, 564 U.S. at 474–75). "To determine whether a claim is 'core,' the Court will first look at the non-exhaustive list of core proceedings in 28 U.S.C. § 157(b)(2)." *In re Point Blank Solutions, Inc.*, 449 B.R. 446, 448-49 (Bankr. D. Del. 2011) (citing *In re Exide Technologies*, 544 F.3d 196, 206 (3d Cir. 2008)). "The Court then, on a claim-by-claim basis, conducts a "two-step test, according to which a claim will be deemed core if (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Id.* The question of jurisdiction is an issue of law subject to de novo review. *See In re Seven Fields Dev. Corp.*, 505 F.3d 237, 253 (3d Cir. 2007); *In re Caterbone*, 640 F.3d 108, 111 (3d Cir. 2011).

Appellants' main jurisdictional argument is that the parties' dispute pertains solely to revenues accruing post-petition that are not part of the Reorganized Debtor's bankruptcy estate. *See* D.I. 16 at 3, 11–12. But "because this dispute could have arisen only in bankruptcy, the bankruptcy court's exercise of jurisdiction

8

did not offend Article III." *In re Somerset*, 949 F.3d at 845 (citing *Stern*, 564 U.S. at 499 (holding that a bankruptcy court's exercise of jurisdiction poses no constitutional problems if "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.")).

Pursuant to the Enforcement Motion, Chisholm requested that the Bankruptcy Court interpret the Plan and Confirmation Order, which implemented Debtors' rejection of the JOAs. (*See* App. 675–711.) As the Bankruptcy Court observed, "[t]he Supreme Court has recognized that a bankruptcy court 'plainly [has] jurisdiction to interpret and enforce its own prior orders.'" *In re Chisholm*, 660 B.R. at 598 (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)). The Third Circuit also has determined that a bankruptcy court has jurisdiction to interpret and enforce the discharge and injunction provisions of its plan and confirmation order. *Mesabi Metallics Co., LLC v. B. Riley FBR, Inc. (In re Essar Steel Minnesota)*, 47 F.4th 193, 201 (3d Cir. 2022). As it challenged the MSJ in the State Court action, the Enforcement Motion asked the Bankruptcy Court to do both.

Moreover, as the Bankruptcy Court correctly concluded, "determining the effect of the Debtor's rejection of the JOAs on the [Appellants'] post-confirmation rights is a core matter since it invokes a substantive right provided by title 11 (that is, rejection of an executory contract under Bankruptcy Code § 365)." *In re Chisholm*, 660 B.R. at 598. As Delaware bankruptcy courts have explained, "a

9

'core' proceeding 'must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be peripheral state law involvement.'" *In re DBSI, Inc.*, 409 B.R. 720, 727 (Bankr. D. Del. 2009) (quoting *In re Stone & Webster, Inc.*, 367 B.R. 523, 526 (Bankr. D. Del. 2007)). Challenges to the effect of orders under § 365 are core proceedings, as "[t]he rejection and assumption and assignment of leases and executory contracts are fundamental issues of bankruptcy law unique to the Bankruptcy Code." *Id.* at 728. *See, e.g., NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528 (1984) ( "[T]he authority to reject an executory contract is vital to the basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization"); *In re Point Blank*, 449 B.R. at 450 (collecting cases holding challenges to the effect of orders under § 365 are core proceedings and ruling that proceeding to determine whether, as a result of rejection order, escrowed funds were property of the estate, was a core proceeding).

In sum, because resolving the Enforcement Motion required interpretation and enforcement of the Plan and Confirmation Order and a determination of the effect of rejection of the JOAs under section 365 of the Bankruptcy Code, the Bankruptcy Court had jurisdiction to decide the Motion.

### B. The Bankruptcy Court Did Not Abuse its Discretion in Declining to Abstain or Declining to Certify Issues to the Oklahoma Supreme Court[2]

A federal court may abstain from hearing a bankruptcy matter "in the interest of justice, or in the interest of comity with state courts or respect for state law." *In re Penson Worldwide*, 587 B.R. 6, 22 (Bankr. D. Del. 2018) (citing 28 U.S.C. § 1334(c)(1)). When evaluating a request for discretionary abstention, courts in this district look to a variety of factors, but as the Bankruptcy Court observed, evaluating these factors is not a mathematical formula. *In re Chisholm*, 660 B.R. at 600-01 (citing *In re Samson Res. Corp.*, 559 B.R. 360, 373 (Bankr. D. Del. 2016)). As the Bankruptcy Court explained, "courts weigh some factors more heavily than others, particularly the effect on the administration of the estate, whether the claim involves only state law issues, and whether the proceeding is core or non-core." *Id.* Courts in this district "have considerable discretion to decide whether to abstain," and the decision "regarding whether or not to permissively abstain is subject to substantial deference on review particularly because permissive abstention is a 'narrow exception to the duty of [the bankruptcy court] to adjudicate a controversy properly before it.'" *In re LandSource Communities Dev.*, 612 B.R. at 492, 499 (quoting *In re Direct Response Media, Inc.*, 466 B.R. 626, 658 (Bankr. D. Del. 2012)).

---

[2] As the Bankruptcy Court correctly determined, because the Enforcement Motion involves core issues arising under title 11, mandatory abstention under 28 U.S.C. § 1334(c)(2) is not applicable here. *See In re Chisholm*, 660 B.R. at 599 n.26.

11

Appellants argue that "there are several reasons why the Bankruptcy Court should have considered abstaining." D.I. 16 at 14. But the "reasons" they identify—that "the Enforcement Motion was fraught with complex and undetermined issues of Oklahoma property and oil and gas law," that those issues were already before the State Court, and that the State Court action and Enforcement Motion affect only post-petition production revenues, D.I. 16 at 14–15—*were* considered by the Bankruptcy Court in reaching its decision not to abstain, *see In re Chisholm,* 600 B.R. at 599–600. And, as noted above, the Bankruptcy Court determined that these reasons to abstain were heavily outweighed by the predominance of core issues and the ample Oklahoma property and oil and gas case law available to the Court to decide the issues before it. That reasonable determination was not an abuse of the court's discretion.

Nor was it an abuse of discretion for the Bankruptcy Court to decline to certify any question of state law to the Oklahoma Supreme Court. *In re Chisholm,* 660 B.R. at 600. Whether to certify a question to the Oklahoma Supreme Court is also a decision that falls within the Bankruptcy Court's sound discretion. *The State of the Netherlands v. MD Helicopters, Inc. (In re MD Helicopters, Inc.),* 641 B.R. 96, 102 (D. Del. 2022) (citing *Lehman Bros. v. Schein,* 416 U.S. 386, 391 (1974)).) This is so for two reasons. First, as noted above, the Bankruptcy Court was satisfied that ample Oklahoma property and oil and gas case law was available to it to decide

12

the issues before it. Second, the Supreme Court of Oklahoma has expressly held that oil and gas leases are transferrable real property interests, *Hinds v. Phillips Petroleum Co.*, 591 P.2d 697, 699 (Okla. 1979), and that a "JOA is a contract to be construed like any other agreement," *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003). And therefore, there was no unsettled question of Oklahoma state law regarding the characterization of oil and gas property rights that changes the contract rejection analysis under federal bankruptcy law.

      C.     **The Bankruptcy Court's Conclusion That Appellants Are Still Bound by The Rejected JOAs Was Not Erroneous**

Pursuant to section 365 of the Bankruptcy Code, a chapter 11 debtor may reject an executory contract, which is generally defined as "[a] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." 3 COLLIER ON BANKRUPTCY ¶ 365.02 (16th ed. 2025) (quoting Countryman, *Executory Contracts in Bankruptcy*, 57 Minn. L. Rev. 439, 446 (1973)). The parties do not dispute that each of the rejected JOAs is an executory contract that was subject to rejection under section 365.

Appellants argue, however, that the rejection of the JOAs restored the parties to tenancy in common status under Oklahoma common law with respect to the oil and gas interests, notwithstanding their prior elections under the Non-Consent Provision, such that the Appellants regained the right to immediate payment of their

13

proportionate share of production revenues as of the Petition Date. The essence of Appellants' argument, therefore, is that rejection of the JOA returned the parties to their positions prior to entering into the JOAs.

But as the Bankruptcy Court recognized, the Supreme Court has expressly held that "[r]ejection of a contract—*any contract*—in bankruptcy operates not as a rescission but as a breach." *Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 379 (2019) (emphasis added). Thus, "rejection does not terminate the contract," and "[w]hen it occurs, the debtor and counterparty *do not go back to their pre-contract positions*. Instead, the counterparty retains the rights it has received under the agreement." *Id.* at 381 (emphasis added); *see also Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 (11th Cir. 2007) (noting that rejection of a contract is not "the functional equivalent of a rescission, rendering void the contract and requiring that the parties be put back in the positions they occupied before the contract was formed").

And because, under Oklahoma law, oil and gas leases are transferrable real property interests, *Hinds*, 591 P.2d at 699, and a "JOA is a contract to be construed like any other agreement," *Pitco*, 63 P.3d at 545, the Bankruptcy Court correctly determined that Chisholm's rejection of the JOAs did not return the parties to their original positions as tenants in common and that, pursuant to the Appellants' elections under the Non-Consent Provisions, the Non-Consent Penalties and the

Relinquishment Period remained and continue to be binding on Appellants. *See Matter of Cont'l Airlines*, 981 F.2d 1450, 1459 (5th Cir. 1993) ("The [rejection] statute does not invalidate the contract, or treat the contract as if it did not exist. To assert that a contract effectively does not exist as of the date of rejection is inconsistent with deeming the same contract breached."); *Sir Speedy, Inc. v. Morse*, 256 B.R. 657, 659 (D. Mass. 2000) ("The post-rejection rights and obligations of the debtor and the non-debtor are exactly the same as they would have been had the debtor first breached the contract and then filed for bankruptcy.")

Accordingly, the Bankruptcy Court properly rejected Appellants' argument that they could not have transferred or relinquished any interests to Chisholm under the JOAs when they elected not to participate under the Non-Consent Provisions, and properly determined that rejection of the JOAs did not unwind Appellants' elections under the Non-Consent Provisions of the JOAs.

## IV. CONCLUSION

The Bankruptcy Court had jurisdiction to decide this dispute which was a core matter under 28 U.S.C. § 157(b). Appellants have failed to demonstrate that the Bankruptcy Court abused its discretion in declining to abstain or certify a question of state law in connection with this dispute. Finally, the Bankruptcy Court's decision on the substantive issue—the effect of the JOAs' rejection under

the Plan and Confirmation Order—applied well settled bankruptcy law that is not inconsistent with Oklahoma state law. Accordingly, I will affirm the Order.

The Court will issue a separate Order consistent with this Opinion.